## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| GLENN E. ELLIS, | ) | CASE NO. 4:12CV3206 |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | MEMORANDUM |
| | ) | AND ORDER |
| ROBERT P. HOUSTON, FRED | ) | |
| BRITTEN, and JON BRUNING, | ) | |
| | ) | |
| Respondents. | ) | |

This matter is before the court on Petitioner Glenn Ellis's ("Petitioner" or "Ellis") Petition for Writ of Habeas Corpus. (Filing No. 1.) Also pending is Ellis's Motion for Stay of Proceedings. (Filing No. 19.) For the reasons set forth below, the court finds that Ellis is not entitled to a stay of these proceedings, and also that a grant of a writ of habeas corpus is not warranted on any of the issues set forth in Ellis's habeas corpus petition.

Ellis argues that he is entitled to a writ of habeas corpus based on the following claims:

Claim One:    Petitioner was denied due process of law and the effective assistance of counsel in violation of the Sixth and Fourteenth Amendments *because* his trial and appellate counsel[1] failed to (1) effectively investigate and gather evidence for Petitioner's case; (2) call witnesses and properly cross-examine witnesses; (3) make timely objections; (4) propose proper jury instructions including an instruction defining the terms in the amended information; (5) preserve issues for appeal; (6) advise Petitioner of his rights under the amended information; (7) file a timely motion in opposition to the State of Nebraska's ("State") amended information; (8) raise issues on appeal, including counsel's own ineffective assistance; and (9) advise Petitioner during critical stages of his appeal.

Claim Two:    Petitioner was denied the right to an impartial jury in violation of the Fifth, Sixth, and Fourteenth Amendments *because* (1) Petitioner was not initially allowed to be part of an ex parte communication between the court, the State, trial counsel, and

---

[1]Ellis was represented by the same attorney at trial and on direct appeal.

a juror; (2) trial counsel induced Petitioner to excuse a juror without cause and without informing Petitioner of the consequences of that action; (3) the jury instructions did not distinguish between "serious bodily injury" and "serious bodily harm;" (4) during deliberations, the jury submitted a note to the trial judge asking the meaning of "serious bodily injury" and "serious bodily harm," and the court incorrectly instructed the jury that the terms were synonymous; (5) the trial court rejected Petitioner's request for a lesser offense instruction to the jury; and (6) one of the jurors waited until after the submission of the case to express her concern that one of the State's witnesses may retaliate against her.

Claim Three:        Petitioner was denied due process of law in violation of the Fifth and Fourteenth Amendments *because* (1) the State amended its information to include a habitual criminal allegation for the purpose of inducing Petitioner to accept a plea bargain; and (2) the habitual criminal allegation was made without sufficient proof that Petitioner was the same person who had been convicted of those crimes.

# I. BACKGROUND

## A.     Conviction

The State charged Ellis by information in the Lancaster County District Court ("state district court") with first degree assault and use of a weapon to commit a felony.  (Filing No. 9-11 at CM/ECF p. 22.)  The State subsequently filed an amended information alleging that Ellis was a habitual criminal.  (*Id.* at CM/ECF p. 40.)  The evidence presented at trial showed that Ellis stabbed his neighbor, Sherman Gray, two times with a knife, and Gray suffered life-threatening injuries as a result of the attack.  The Nebraska Court of Appeals made the following findings of fact on direct appeal:

Until the early morning hours of July 5, 2008, Ellis and Sherman Gray were friends who lived next door to each other in a four-plex apartment building. Ellis, Gray, and their families had made plans to spend the July 4 holiday together, but a dispute arose and the plans fell through, although neither family informed the other of their intent to cancel the previously arranged plans. After midnight, in the early morning hours of July 5, Gray

2

knocked on Ellis' door to inform him that their friendship was over. An argument over unrelated topics ensued, the argument escalated into a physical fight culminating in Ellis stabbing Gray two times with a knife approximately 9 inches long. Gray suffered a collapsed lung and a cut scapula artery, which were life-threatening injuries.

Ellis was charged with first degree assault and use of a weapon to commit a felony in August 2008. In November, the State sought to amend the information to add the allegations that Ellis was a habitual criminal to both charged offenses. The court granted the State's request over Ellis' objection. The State's amended information added the allegations that Ellis was a habitual criminal in that he "has been twice convicted of a crime, sentenced and committed to prison, in this or any other state, or by the United States, or once in this state and at least once in any other state, or by the United States, for terms of not less than one year upon each of said convictions, by which convictions said defendant is deemed to be a habitual criminal."

A jury trial was held from January 27 to January 30, 2009. Evidence was adduced as previously set forth. Further, Ellis testified in his own defense that, on the night of the incident, Gray, Gray's son Michael Bully, and Michael's girlfriend were assaulting his wife, Tammie Ellis. He attempted to assist Tammie, but he was out of breath due to emphysema, so he went inside his apartment and grabbed a knife. He began swinging the knife in an attempt to stop the assault on Tammie and ended up stabbing Gray.

At the close of all the evidence, Ellis moved to dismiss the charges which motion was overruled by the court. Just as the court was about to discharge the alternate juror and submit the case to the jury for deliberations, a juror asked to address the court. The court conferred with the juror in the judge's chambers with counsel for the State and the defense present, but outside the presence of Ellis and the other jurors. The juror indicated to the court that one of the State's witnesses lived only two houses away from her and, although she did not know the witness, she was aware that he was a convicted felon and on parole and the juror was concerned that if the case were decided against the State's witness, the witness might retaliate. However, the juror indicated that she would still be impartial at arriving at a verdict.

The trial court then consulted with counsel for the State and the defense. Counsel for the State indicated that he believed that the juror should be struck. Defense counsel indicated that he would need to discuss the matter with Ellis, so Ellis joined the parties in the judge's chambers. Ellis was informed of the juror's concerns and Ellis indicated that he understood that the juror was concerned with her safety and that he would leave the matter for the court to decide what was best. Defense counsel ultimately submitted

3

the matter to the trial court's discretion, but stated that he was leaning toward having the juror struck. The trial court elected to strike the juror and permit the alternate juror to deliberate. At Ellis' request, the court advised the jury that the juror was not being excused for any reason related to the trial itself.

During jury instructions, the court instructed the jury to consider self-defense and defense of another, but the court refused Ellis's request to instruct the jury on the lesser offense of third degree assault. The case was then submitted to the jury. During the jury's deliberations, the jury submitted the following question to the court: "Under instruction 5, are the definitions of 'serious bodily harm' and 'serious bodily injury' equal?" The court discussed the following answer with counsel for the State, defense counsel, and Ellis present: "Serious bodily injury is a form of serious bodily harm. Serious bodily harm includes serious bodily injury." Neither the State nor defense counsel objected to the answer proffered by the court.

The jury found Ellis guilty of first degree assault and use of a weapon to commit a felony. Thereafter, the trial court determined that Ellis was a habitual criminal and sentenced him to consecutive sentences of a mandatory minimum of 10 years' to 10 years' imprisonment on each of the convictions, resulting in a total sentence of a mandatory minimum of 20 years' to 20 years' imprisonment.

(Filing No. 9-1 at CM/ECF pp. 2-6.)

## B.   Direct Appeal

On July 29, 2009, Ellis filed a notice of appeal from his convictions and sentences.

(Filing No. 9-11 at CM/ECF p. 1.)  On direct appeal, Ellis argued that the state district court

erred in (1) failing to instruct the jury on the lesser-included offense of third degree assault;

(2) failing to instruct the jury on the definition of "serious bodily harm," and failing to properly

answer a question submitted by the jury regarding "serious bodily harm" and "serious bodily

injury"; (3) discharging a juror from service immediately prior to submitting the case to the

jury for deliberation; (4) denying Ellis's motion to dismiss at the close of the evidence; (5)

making various errors with respect to the habitual criminal allegations; and (6) imposing an

excessive sentence.  (Filing No. 9-5 at CM/ECF pp. 7-9.)

The Nebraska Court of Appeals affirmed Ellis's convictions and sentences in a written opinion on May 4, 2010.  (Filing No. 9-1.)  Thereafter, Ellis petitioned the Nebraska Supreme Court for further review.  (Filing No. 9-7 at CM/ECF pp. 1-10.)  The Nebraska Supreme Court denied Ellis's petition on June 17, 2010.  (Filing No. 9-3 at CM/ECF p. 2.)

**C.    Post-Conviction Motion and Appeal**

Ellis filed a motion for post-conviction relief in the state district court on August 25, 2010.  (Filing No. 9-13 at CM/ECF pp. 31-44.)  Ellis argued in his post-conviction motion that (1) the amended information charging him with being a habitual criminal was void or voidable; (2) he was not provided a copy of the amended information; (3) he did not receive adequate notice of the habitual criminal allegations; (4) he was denied the effective assistance of counsel at trial and on appeal; and (5) the state district court committed judicial misconduct.  (*Id.*)

On April 6, 2011, the state district court denied Ellis's post-conviction motion without holding an evidentiary hearing.  (Filing No. 9-13 at CM/ECF pp. 83-92.)  Ellis appealed the state district court's denial of post-conviction relief to the Nebraska Court of Appeals, which affirmed the state district court's decision on December 16, 2011.  (Filing No. 9-2 at CM/ECF pp. 2-10.)  Thereafter, Ellis petitioned the Nebraska Supreme Court for further review.  (Filing No. 9-10 at CM/ECF pp. 2-8.)  The Nebraska Supreme Court denied Ellis's petition on April 11, 2012.  (Filing No. 9-4 at CM/ECF p. 2.)

**D.    Habeas Corpus Petition**

Ellis filed his habeas corpus petition in this court on October 1, 2012.  (Filing No. 1.)  In response to the petition, Respondent filed an answer, a brief in support of the answer,

5

and the relevant state court records.  (Filing Nos. 9, 10, 11, and 12.)  Thereafter, Ellis filed a brief in support of his petition.  (Filing No. 13.)

Several months after this case was fully submitted for disposition, Ellis filed a "Motion for Stay of Proceedings."  (Filing No. 17.)  In Ellis's Motion, Ellis asked this court to stay these habeas corpus proceedings so that he could exhaust a "constitutional claim" in the Nebraska state courts.  (*Id.* at CM/ECF p. 2.)  The court denied Ellis's motion without prejudice to reassertion because Ellis failed to identify which of the claims raised in his federal habeas corpus petition he sought to exhaust in the Nebraska state courts, and also failed to make any showing of good cause. for failing to exhaust the unidentified claim. (Filing No. 18 at CM/ECF p. 2.)  Ellis reasserted his "Motion for Stay of Proceedings" on September 3, 2013, which is currently pending before the court.  (Filing No. 19.)

## II.  MOTION FOR STAY OF PROCEEDINGS

Ellis seeks an order from this court staying these proceedings so that he can file a successive motion for post-conviction relief in the state district court.  Petitioner argues that the Nebraska Supreme Court's recent decision in *State v. White*, 830 N.W.2d 215 (Neb. 2013), impacts the constitutionality of his criminal conviction because the decision "substantially [broadened] the scope of a citizen['s] right to stand and defend in their domicile."  (Filing No. 19 at CM/ECF p. 2.)  Petitioner argues that he now has a right to "self-defense, non-retreat defense" because of the holding in *White*.  (*Id.*)

A stay and abeyance of a federal habeas corpus petition is only appropriate in "limited circumstances."  *Rhines v. Weber*, 544 U.S. 269, 277 (2005).  A court may order a stay and abeyance only when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court.  *Id.* at 277.  Furthermore, "the

6

district court would abuse its discretion if it were to grant [a petitioner] a stay when his unexhausted claims are plainly meritless." *Id.*

Here, Petitioner does not identify any claim in his habeas corpus petition that is unexhausted. In addition, Petitioner's request for a stay is plainly meritless. In *White*, 830 N.W.2d 215, the Nebraska Supreme Court affirmed a decision by the Nebraska Court of Appeals in *State v. White*, 819 N.W.2d 473 (Neb. Ct. App. 2012). In *White*, the Nebraska Court of Appeals clarified that the privilege of non-retreat extended to incidents involving cohabitants, not just to incidents involving unlawful intruders. The holding in *White* does not apply to the facts of Petitioner's case, as Petitioner and the victim were not cohabitants and the stabbing did not occur in Petitioner's dwelling. (*See* Petitioner's trial testimony at Filing No. 10-4 at CM/ECF pp. 16-18, 47-56 (Petitioner testified that the victim was his neighbor and the stabbing occurred outside of their apartments.) For these reasons, the court will deny Petitioner's Motion for Stay of Proceedings.

Because this matter was fully submitted for disposition prior to Ellis's filing of a Motion for Stay of Proceedings, no additional briefing is required in this case. Accordingly, the court will now turn to its discussion of Ellis's habeas corpus petition.

### III.  STANDARD OF REVIEW

**A.   Standard Under 28 U.S.C. § 2254(d)**

When a state court has adjudicated a habeas petitioner's claim on the merits, there is a very limited and extremely deferential standard of review both as to the law and the facts. *See* 28 U.S.C. § 2254(d). Section 2254(d)(1) states that a federal court may grant a writ of habeas corpus if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme

Court of the United States." 28 U.S.C. § 2254(d)(1). As explained by the Supreme Court in *Williams v. Taylor*, 529 U.S. 362 (2000), a state court acts contrary to clearly established federal law if it applies a legal rule that contradicts the Supreme Court's prior holdings or if it reaches a different result from one of that Court's cases despite confronting indistinguishable facts. 529 U.S. at 405-406. Further, "it is not enough for [the court] to conclude that, in [its] independent judgment, [it] would have applied federal law differently from the state court; the state court's application must have been objectively unreasonable." *Rousan v. Roper*, 436 F.3d 951, 956 (8th Cir. 2006).

With regard to the deference owed to factual findings of a state court's decision, Section 2254(d)(2) states that a federal court may grant a writ of habeas corpus if a state court proceeding "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Additionally, a federal court must presume that a factual determination made by the state court is correct, unless the petitioner "rebut[s] the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

As the Supreme Court noted, "[i]f this standard is difficult to meet, that is because it was meant to be." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011). The deference due state court decisions "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Id.* In short, "[i]t bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* However, this high degree of deference only applies where a claim has been adjudicated on the merits by the state court. *See Brown v. Luebbers*, 371 F.3d 458, 460 (8th Cir. 2004), ("[A]s

the language of the statute makes clear, there is a condition precedent that must be satisfied before we can apply the deferential AEDPA standard to [the petitioner's] claim. The claim must have been 'adjudicated on the merits' in state court.").

The Eighth Circuit clarified what it means for a claim to be adjudicated on the merits, finding that:

> AEDPA's requirement that a petitioner's claim be adjudicated on the merits by a state court is not an entitlement to a well-articulated or even a correct decision by a state court. . . . Accordingly, the postconviction trial court's discussion of counsel's performance–combined with its express determination that the ineffective-assistance claim as a whole lacked merit–plainly suffices as an adjudication on the merits under AEDPA.

*Worthington v. Roper*, 631 F.3d 487, 496-97 (8th Cir. 2011), (internal quotation marks and citations omitted).  The court also determined that a federal court reviewing a habeas claim under AEDPA must "look through" the state court opinions and "apply AEDPA review to the 'last reasoned decision' of the state courts."  *Id.* at 497.  A district court should do "so regardless of whether the affirmance was reasoned as to some issues or was a summary denial of all claims."  *Id.*  The Supreme Court agrees, stating:

> There is no text in the statute requiring a statement of reasons.  The statute refers only to a "decision," which resulted from an "adjudication."  As every Court of Appeals to consider the issue has recognized, determining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning.

*Harrington*, 131 S. Ct. at 784.

**B.   Exhaustion Requirement**

As set forth in 28 U.S.C. § 2254(b)(1):

> (b)(1)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–

9

>     (A)    the applicant has exhausted the remedies available in the courts of the State; or
>
>     (B)    (I)    there is an absence of available State corrective process; or
>
>             (ii)    circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1).

The United States Supreme Court has explained the habeas exhaustion requirement as follows:

> Because the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts . . . state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.

*O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).  A state prisoner must therefore "fairly present" the substance of each federal constitutional claim to the state courts *before* seeking federal habeas relief.  *Id.* at 844.  In Nebraska, "one complete round" ordinarily means that each § 2254 claim must have been presented in an appeal to the Nebraska Court of Appeals, and then in a petition for further review to the Nebraska Supreme Court if the Court of Appeals rules against the petitioner.  *See Akins v. Kenney*, 410 F.3d 451, 454-55 (8th Cir. 2005).

Moreover, where "no state court remedy is available for the unexhausted claim—that is, if resort to the state courts would be futile—then the exhaustion requirement in § 2254(b) is satisfied, but the failure to exhaust 'provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim, unless the petitioner can demonstrate cause and prejudice for the

default.'" *Armstrong v. Iowa*, 418 F.3d 924, 926 (8th Cir. 2005), (quoting *Gray v. Netherland*, 518 U.S. 152, 162 (1996)).  Stated another way, if a claim has not been presented to the Nebraska appellate courts and is now barred from presentation, the claim is procedurally defaulted, not unexhausted.  *Akins*, 410 F.3d at 456 n. 1.

Under Nebraska law, "[a]n appellate court will not entertain a successive motion for postconviction relief unless the motion affirmatively shows on its face that the basis relied upon for relief was not available at the time the movant filed the prior motion."  *State v. Ortiz*, 670 N.W.2d 788, 792 (Neb. 2003).  Additionally, "[a] motion for postconviction relief cannot be used to secure review of issues which were or could have been litigated on direct appeal."  *Hall v. State*, 646 N.W.2d 572, 579 (Neb. 2002).  In such circumstances, where a Nebraska state court rejects a claim on state procedural grounds, and issues a "'plain statement' that it is rejecting petitioner's federal claim on state procedural grounds," a federal habeas court is precluded from "reaching the merits of the claim."  *Shaddy v. Clarke*, 890 F.2d 1016, 1018 (8th Cir. 1989); *see also* *Greer v. Minnesota*, 493 F.3d 952, 957 (8th Cir. 2007), (reiterating that "when a state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement," federal habeas is barred because "[i]n such instances, the state prisoner forfeits his right to present his federal claim through a federal habeas corpus petition") (quotations omitted).  However, the state court procedural decision must "rest[] on independent and adequate state procedural grounds."  *Barnett v. Roper*, 541 F.3d 804, 808 (8th Cir. 2008), (quotation omitted).  "A state procedural rule is adequate only if it is a firmly established and regularly followed state practice."  *Id.* (quotation omitted).

11

## IV.  DISCUSSION

**A.    Claim One**

In Claim One, Ellis argues that the attorney who represented him at trial and on direct appeal was ineffective.  Claim One has nine parts, which are summarized in the introductory paragraphs of this order.  Most of Ellis's arguments relate to his attorney's conduct during the trial court proceedings.  However, Ellis also generally argues that his attorney failed to preserve various issues on direct appeal, and also that he should have raised his own ineffective assistance on direct appeal.  All nine parts of Claim One are conclusory and unsupported by any specific factual basis.

Ellis's first opportunity to raise the arguments presented in Claim One was in his post-conviction motion because the same attorney represented Ellis at trial and on direct appeal.  *See State v. Dunster*, 769 N.W.2d 401, 410-411 (Neb. 2009), (reiterating that, in Nebraska, claims of ineffective assistance of counsel raised on direct appeal by the same counsel who represented defendant at trial are premature and will not be addressed on direct appeal).  Respondent argues, and the court agrees, that Claim One is procedurally defaulted.

### 1.    Claim One, Parts 1, 2, and 4 through 9

Ellis arguably raised parts 1, 2, and 4 through 9 of Claim One to the state district court in his post-conviction motion.  (Filing No. 9-13 at CM/ECF pp. 35-39.)  However, he did not raise any of the arguments to the Nebraska Court of Appeals on appeal from the denial of his post-conviction motion.  (*See* appellate brief at Filing No. 9-8 at CM/ECF pp. 1-31.)  In addition, he did not raise the arguments in his petition for further review to the Nebraska Supreme Court.  (*See* Filing No. 9-10 at CM/ECF pp. 2-8.)  Because Ellis did not

12

present these arguments to the Nebraska Court of Appeals or the Nebraska Supreme Court, Ellis did not raise them in one complete round in the Nebraska state courts as required by 28 U.S.C. § 2254(b)(1).  Moreover, he cannot now raise the arguments in a successive motion for post-conviction relief.  *See* *Ortiz*, 670 N.W.2d at 792.  As such, parts 1, 2, and 4 through 9 of Claim One are procedurally defaulted.

### 2.   Claim One, Part 3

In part 3 of Claim One, Ellis argues that his counsel "failed to make timely objections."  (Filing No. 1 at CM/ECF p. 7.)  Ellis does not set forth any facts in support of this claim, such as what objections his counsel should have raised.  Ellis presented a more-specific version of this argument to the state district court in his post-conviction motion.  (Filing No. 9-13 at CM/ECF pp. 35-39.)  However, on appeal to the Nebraska Court of Appeals, Ellis only generally argued that his trial counsel failed to make timely objections.  (Filing No. 9-8 at CM/ECF pp. 1-31.)  That is, as he has done in his habeas corpus petition, Ellis did not set forth any facts in support of his argument or specify what objections his counsel should have raised.   The Nebraska Court of Appeals wrote the following in response to Ellis's general argument that his counsel failed to make timely objections:

> Ellis further contends in his brief that the district court erred in failing to determine that the record supports his claims that trial counsel was ineffective for failing to make timely objections at critical stages of his trial. However, he makes only general statements; he does not provide any citation to the record or otherwise identify facts supporting his claim. We are left to speculate as to the nature of counsel's failings which he wishes to raise on appeal. This is not our province.

(Filing No. 9-2 at CM/ECF pp. 7-8.)

In addition to not raising part 3 of Claim One to the Nebraska Court of Appeals, Ellis also did not raise the argument to the Nebraska Supreme Court in his petition for further

13

review.  (Filing No. 9-10 at CM/ECF pp. 2-8.)  For these reasons, Ellis did not raise part 3 of Claim One in "one complete round" in the Nebraska state courts as required by 28 U.S.C. § 2254(b)(1).  Moreover, he cannot now raise the argument in a successive motion for post-conviction relief.  *See Ortiz*, 670 N.W.2d at 792.  As such, part 3 of Claim One is procedurally defaulted.

### 3.    Cause and Prejudice/Fundamental Miscarriage of Justice

A claim that has been procedurally defaulted in the state courts will not be entertained in a federal habeas corpus proceeding, unless the petitioner has shown "cause and prejudice" to excuse his procedural default or, in the alternative, that there would be a "fundamental miscarriage of justice" if the federal court declined to consider the claim. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).  Here, Ellis has not argued, much less demonstrated, cause and prejudice for the default of Claim One or that the court's failure to consider Claim One will result in a fundamental miscarriage of justice.  (*See* Ellis's response to Respondent's answer and brief at Filing No. 13.)  Accordingly, the court will dismiss Claim One in its entirety.

## B.    Claim Two

In Claim Two, Ellis argues that his convictions and sentences were the result of the denial of his "right to an impartial jury and proper instruction to the jury, in violation of Ellis's right to due process and equal protection."  (Filing No. 1 at CM/ECF p. 11.)  Ellis raises six due process and equal protection arguments in Claim Two, which are summarized in the introductory paragraphs of this Memorandum and Order.   Ellis never raised these arguments as due process or equal protection claims to the state district court, the Nebraska Court of Appeals, or the Nebraska Supreme Court.  *See Cox v. Burger*, 398 F.3d

14

1025, 1031 (8th Cir.), *cert. denied*, 546 U.S. 844 (2005), (holding that in order to fairly present a federal constitutional claim, the petitioner must "refer to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue."). As such, the court finds that Claim Two is procedurally defaulted. Ellis has not argued, much less demonstrated, cause and prejudice for the default of these arguments or that the court's failure to consider them will result in a fundamental miscarriage of justice.

The Nebraska state courts considered and rejected arguments similar to those raised in Claim Two. Thus, notwithstanding the court's finding that Claim Two is entirely procedurally defaulted, out of an abundance of caution, the court will discuss Claim Two's six parts in the paragraphs below.

### 1.     Claim Two, Parts 1, 2, and 6

In parts 1, 2, and 6 of Claim Two, Ellis argues that he was denied due process and equal protection of the laws because (1) a juror waited until after the submission of the case to express concerns about her safety, (2) a conference was held with the juror outside of Ellis's presence, and (3) Ellis's attorney "induced" the court to excuse the juror. (Filing No. 1 at CM/ECF pp. 6, 11-13.)

The record reflects that the trial judge, Ellis's attorney, and the prosecuting attorney, met briefly with a juror to discuss her concerns. (*See* bill of exceptions at Filing No. 10-5 at CM/ECF pp. 42-48.) The juror explained that one of the State's witnesses—a convicted felon—lived in her neighborhood and she was concerned that he would retaliate against her if the jury were to decide the case against the State. (*See id.*; *see also* opinion by Court of Appeals at Filing No. 9-1 at CM/ECF p. 4.) After the juror was excused from the judge's

15

chambers, Ellis immediately joined the parties in chambers at his counsel's request.  After

Ellis was apprised of the juror's concerns, he took no position as to whether the court should

strike the juror.  (Filing No. 9-1 at CM/ECF p. 4; *see also* bill of exceptions at Filing No. 10-5

at CM/ECF p. 51 ("I'll go along with whatever the Court wants to do about it.  I have no

problem with that.").)  Ellis's trial counsel submitted the matter to the trial court's discretion,

but stated that he was leaning toward having the juror struck.  (*Id.*)

On direct appeal, the Nebraska Court of Appeals rejected Ellis's argument that the

district court erred in discharging the juror from service.  The court wrote, in relevant part:

> Although Ellis and defense counsel submitted the matter to the trial court's
> discretion, Ellis now claims that the district court should not have excused the
> juror, or in the alternative, should have declared a mistrial.  Again, we note
> the principle that one may not waive an error, gamble on a favorable result,
> and, upon obtaining an unfavorable result, assert the previously waived error.
> *State v. Iromuanya, supra*; *State v. Hudson, supra*.  Ellis submitted the
> decision of whether to discharge the juror to the trial court's discretion and
> Ellis was convicted.  Ellis cannot now claim error because an unfavorable
> result was reached.

(Filing No. 9-1 at CM/ECF p. 9.)

The Court of Appeals's findings of fact and conclusions of law are entitled to

deference under the statutory standard of review that applies to factual and legal

conclusions reached by the state courts.  Moreover, even if the court were to make an

independent determination of these arguments' merits, it would determine that Ellis is not

entitled to relief.  Ellis does not explain how the brief discussion with the juror held outside

of his presence prejudiced him or violated his rights to due process or equal protection.  In

addition, he does not explain how his attorney "induced" the court to strike the juror.  Indeed,

the record reflects that Ellis's attorney and Ellis left the decision to the discretion of the

court.  Ellis's arguments are meritless and a grant of a writ of habeas corpus is not warranted on parts 1, 2, or 6 of Claim Two.

### 2. Claim Two, Parts 3 and 4

In parts 3 and 4 of Claim Two, Ellis argues that he was denied due process and equal protection of the laws because the court did not explain the difference between "serious bodily injury" and "serious bodily harm" to the jury.  (Filing No. 1 at CM/ECF pp. 11-13.)  While Ellis did not present these arguments to the Nebraska state courts as due process or equal protection claims, he did argue to the Nebraska Court of Appeals that the district court erred in failing to properly distinguish between serious bodily injury and serious bodily harm.  (*See* appellate court brief at Filing No. 9-5 at CM/ECF pp. 28-33.)  The Nebraska Court of Appeals considered and rejected this argument on direct appeal.  It wrote:

> Ellis claims that the district court erred in failing to instruct the jury on the definition of serious bodily harm. However, Ellis did not object that the jury instructions failed to include a definition of "serious bodily harm." Failure to object to a jury instruction after it has been submitted to counsel for review precludes raising an objection on appeal absent plain error. *Tolliver v. Visiting Nurse Ass'n of Midlands*, 278 Neb. 532, 771 N.W.2d 908 (2009).

> Ellis also contends that, in answering a question submitted by the jury, the district court failed to properly distinguish between "serious bodily injury" and "serious bodily harm." During deliberations, the jury submitted the following question to the court: "Under instruction 5 are the definitions of "serious bodily harm" and 'serious bodily injury' equal?" The court discussed the following answer with counsel for the State, defense counsel, and Ellis present: "Serious bodily injury is a form of serious bodily harm. Serious bodily harm includes serious bodily injury." Neither the State nor defense counsel objected to the answer proffered by the court. One may not waive an error, gamble on a favorable result, and, upon obtaining an unfavorable result, assert the previously waived error. *State v. Iromuanya*, 272 Neb. 178, 719 N.W.2d 263 (2006); *State v. Hudson*, 268 Neb. 151, 680 N.W.2d 603 (2004). Since Ellis acquiesced to the answer provided by the district court in response

17

to the jury's question, he cannot now complain that the answer constituted reversible error.

(Filing No. 9-1 at CM/ECF pp. 8-9.)

To the extent this passage from the Nebraska Court of Appeals's opinion may be considered an adjudication of the merits of parts 3 or 4 of Claim Two, it is entitled to deference under the statutory standard of review that applies to factual and legal conclusions reached by the state courts. Moreover, this court agrees with the court's factual determinations. The record reflects that Ellis did not ask the court to provide the jury with the definition of serious bodily harm. (*See* proposed jury instructions in state court transcript at Filing No. 9-11 at CM/ECF pp. 52-72; *see also* Ellis's appellate court brief at Filing No. 9-5 at CM/ECF p. 31 ("The trial court did not give any definition for serious bodily harm when it instructed the jury prior to deliberations. Neither party requested that the court do so[.]").) The record also reflects that Ellis did not object to the court's response to the jury's question about serious bodily harm and serious bodily injury. (*See* bill of exceptions at Filing No. 10-5 at CM/ECF p. 55; *see also* Ellis's appellate court brief at Filing No. 9-5 at CM/ECF p. 31 ("Counsel for the State and counsel for Appellant did not object to the court submitting the answer to the jury[.]"). ) Moreover, Ellis fails to explain how the court's instruction to the jury deprived him of due process or equal protection. For these reasons, a grant of a writ of habeas corpus is not warranted on parts 3 or 4 of Claim Two.

### 3.    Claim Two, Part 5

In parts 5 of Claim Two, Ellis argues that he was denied due process and equal protection of the laws because the trial court refused to instruct the jury that it could consider the lesser included offense of third degree assault. (Filing No. 1 at CM/ECF p. 11.)

18

Ellis did not present this argument to the Nebraska state courts as a due process or equal

protection claim.  However, he did argue to the Nebraska Court of Appeals that the district

court erred by not instructing the jury that it could consider the lesser offense of third degree

assault.  (*See* appellate court brief at Filing No. 9-5 at CM/ECF pp. 25-27.)  The Nebraska

Court of Appeals considered and rejected this argument on direct appeal.  It wrote:

> Ellis contends that the district court erred in denying his request to instruct the jury on the lesser-included offense of third degree assault. The district court determined that there was no rational basis for the jury to convict Ellis of the lesser charge of third degree assault.
>
> A court must instruct on a lesser-included offense if (1) the elements of the lesser offense for which an instruction is requested are such that one cannot commit the greater offense without simultaneously committing the lesser offense and (2) the evidence produces a rational basis for acquitting the defendant of the greater offense and convicting the defendant of the lesser offense. *State v. Schroeder*, 279 Neb. 199, 777 N.W.2d 793 (2010). Third degree assault is a lesser-included offense of first degree assault. *State v. Williams*, 243 Neb. 959, 503 N.W.2d 561 (1993). Therefore, an instruction on third degree assault would be appropriate if the evidence in this case justifies its submission.
>
> First degree assault requires the State to prove that the defendant caused serious bodily injury, Neb. Rev. Stat. § 28-308 (Reissue 2008), whereas third degree assault requires mere bodily injury. Neb Rev. Stat. § 28-310 (Reissue 2008). "Serious bodily injury" is defined as "bodily injury which involves a substantial risk of death, or which involves substantial risk of serious permanent disfigurement, or protracted loss or impairment of the function of any part or organ of the body." Neb. Rev. Stat. § 28-109 (Reissue 2008). The evidence in this case established that Gray suffered a collapsed lung and an arterial cut resulting in life-threatening injuries. Due to the nature of Gray's injuries, there was no rational basis for convicting Ellis of the lesser charge of third degree assault which required a finding of mere bodily injury as opposed to a finding of serious bodily injury for the charge of first degree assault.

(Filing No. 9-1 at CM/ECF pp. 6-8.)

The Court of Appeals's findings of fact and conclusions of law are entitled to

deference under the statutory standard of review that applies to factual and legal

conclusions reached by the state courts.  The Court of Appeals reviewed all of the evidence and determined that there was no evidence from which a jury could conclude that Ellis committed third degree assault.  The court agrees.

Moreover, the Eighth Circuit Court of Appeals has held that the failure to give a lesser-included-offense instruction in a noncapital case rarely, if ever, presents a constitutional question.  *Pitts v. Lockhart*, 911 F.2d 109, 112 (8th Cir. 1990).  Indeed, the Supreme Court has never held that the failure to give a lesser-included offense instruction in a noncapital case was a violation of the Constitution.  In *Beck v. Alabama*, 447 U.S. 625 (1980), the Supreme Court held that, in a capital case, the failure to instruct the jury on a lesser included offense violates the Due Process Clause if there was evidence to support the instruction.  The *Beck* Court expressly declined to decide whether the Due Process Clause requires the giving of a lesser included offense instruction in a non-capital case.  *Id.* at 638 n. 14.  Because the Supreme Court has not decided whether there is a constitutional right to a lesser-included-offense charge in noncapital cases, the Nebraska Court of Appeals's decision on this matter cannot be said to have been "contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).  A grant of a writ of habeas corpus is not warranted on this issue.

## C.     Claim Three

In Claim Three, Ellis argues that he was denied due process of law in violation of the Fifth and Fourteenth Amendments because the state district court allowed the State to amend the information to allege that Ellis was a habitual criminal.  (Filing No. 1 at CM/ECF p. 13.)  This argument was never raised as a federal due process claim to the state district court, the Nebraska Court of Appeals, or the Nebraska Supreme Court.  *See Cox*, 398 F.3d

at 1031 (holding that in order to fairly present a federal constitutional claim, the petitioner must "refer to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue."). As such, the claim is procedurally defaulted. Ellis has not argued, much less demonstrated, cause and prejudice for the default of Claim Three or that the court's failure to consider the claim will result in a fundamental miscarriage of justice.

The Nebraska state courts considered and rejected arguments that are similar to those raised in Claim Three. Thus, notwithstanding the court's finding that Claim Three is entirely procedurally defaulted, out of an abundance of caution, the court will also discuss Claim Three's merits. On appeal to the Nebraska Court of Appeals, Ellis argued that the state district court erred when it permitted the State to amend the information to allege that Ellis was a habitual criminal, and also erred when it determined that the State had proven that Ellis was a habitual criminal. (Filing No. 9-5 at CM/ECF pp. 21-25, 3-48.) The Nebraska Court of Appeals considered and rejected these arguments on direct appeal. It wrote:

(a) Amendment of Information to Add Habitual Criminal Allegations

Ellis contends that the district court erred in allowing the State, prior to trial, to amend the information to allege that he was a habitual criminal. He claims the State used the habitual criminal allegations as a coercive tool in an effort to compel him to enter a plea and, as a result of exercising his right to a jury trial, he was subjected [to] a far harsher sentence.

A district court, in its discretion, may permit a criminal information to be amended at any time before verdict or findings if no additional or different offense is charged and the substantial rights of the defendant are not prejudiced. *State v. Aldrich*, 226 Neb. 645, 413 N.W.2d 639 (1987).

It is well-established that the habitual criminal statutes do not create a separate offense, but, rather, provide for enhanced punishment where a

defendant is found to be a "habitual criminal." *State v. Taylor*, 12 Neb. App. 58, 666 N.W.2d 753 (2003). Further, a defendant's due process rights are not violated by the use of the habitual criminal charge in an attempt to induce a guilty plea as long as the defendant is free to accept or reject the State's offer. *State v. Bartlett*, 210 Neb. 886, 317 N.W.2d 102 (1982).

In this case, the State's attorney stated that he chose not to seek to amend the information to add the habitual criminal allegations until depositions were completed, plea negotiations exhausted, and also because certified copies of Ellis' prior convictions were not available at the time of the original charging decision. Since the amendment did not add an additional or separate charge and did not prejudice Ellis, the district court did not abuse its discretion by permitting the State to amend the information to add the habitual criminal allegations.

(b) Failure to Include Sufficient Facts in Habitual Criminal Allegations

Ellis also contends that district court erred by determining he was a habitual criminal because the State failed to allege facts regarding his purported prior convictions in the amended information as required by § 29-2221(2). The State charged the habitual criminal allegation in the language of the statute, which is sufficient; however, we note that it is preferable that a habitual criminal advisement refer to specific in-state, out-of-state, and United States convictions as the relevant prior convictions under § 29-2221. *See State v. Hall*, 268 Neb. 91, 679 N.W.2d 760 (2004).

(c) Failure of Proof

Third, Ellis contends that the State failed to establish the prior convictions by a preponderance of the evidence. He claims that the State failed to prove that he was the person convicted in the prior convictions offered by the State at the enhancement hearing.

The State offered authenticated records of three convictions of a Glenn E. Ellis: the first was a 1979 robbery conviction for which he was sentenced to 18 months' to 3 years' imprisonment, the second was a 1991 attempted delivery of a controlled substance conviction for which he was sentenced to 3 to 6 years' imprisonment, and the third was a 1993 attempted escape conviction for which he was sentenced to 1 year imprisonment. The records reflect that Ellis was represented by counsel at all pertinent times in all three previous cases.

An authenticated record establishing a prior conviction of a defendant with the same name is prima facie evidence sufficient to establish identity for the purpose of enhancing punishment and, in the absence of any denial or contradictory

22

> evidence, is sufficient to support a finding by the court that the accused has been convicted prior thereto.

*State v. Thomas*, 268 Neb. 570, 590, 685 N.W.2d 69, 85-86 (2004); Accord *State v. Sardeson*, 231 Neb. 586, 437 N.W.2d 473 (1989). The documents offered by the State in this case meet this requirement and therefore were sufficient to establish Ellis' identity as the person convicted in the prior offenses offered by the State for the purposes of enhancement.

(Filing No. 9-1 at CM/ECF pp. 12-14.)

The Nebraska Court of Appeals's findings of fact and conclusions of law are entitled to deference under the statutory standard of review that applies to factual and legal conclusions reached by the state courts. Ellis has not argued, much less established, that the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or that the state court reached "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2). Moreover, the transcript of the proceedings supports the state court's factual determinations. (*See* Pen Pack of 1979 conviction for robbery at Filing No. 10-6 at CM/ECF pp. 138-144, Pen Pack of 1991 conviction for attempted delivery of controlled substance at *id.* at CM/ECF pp. 145-156, and Pen Pack of 1993 conviction for attempted escape from official detention at *id.* at CM/ECF pp. 157-168.) A grant of a writ of habeas corpus is not warranted on this issue.

## V. CERTIFICATE OF APPEALABILITY

A petitioner cannot appeal an adverse ruling on his petition for writ of habeas corpus under § 2254 unless he is granted a certificate of appealability. 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1). A certificate of appealability cannot be granted unless the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C.

23

§ 2253(c)(2).  To make such a showing, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. Daniel*, 529 U.S. 473, 484 (2000).

In this case, Ellis has failed to make a substantial showing of the denial of a constitutional right.  The court is not persuaded that the issues raised in the Petition are debatable among reasonable jurists, that a court could resolve the issues differently, or that the issues deserve further proceedings.  Accordingly, the court will not issue a certificate of appealability in this case.

IT IS THEREFORE ORDERED that:

1.      Petitioner's Motion for Stay of Proceedings (Filing No. 19) is denied;

2.      This matter is dismissed with prejudice, and a separate judgment will be entered in accordance with this Memorandum and Order; and

3.      The court will not issue a certificate of appealability in this matter.

DATED this 21st day of November, 2013.

BY THE COURT:

s/Laurie Smith Camp
Chief United States District Judge

---

*This opinion may contain hyperlinks to other documents or Web sites.  The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.